# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 09-60202-CIV-COHN/SELTZER

THE CONTINENTAL GROUP, INC.,
a Florida Corporation,

       Plaintiff,

v.

KW PROPERTY MANAGEMENT, LLC d/b/a KW
PROPERTY MANAGEMENT AND CONSULTING, LLC,
a Florida Limited Liability Company; KW HOLDING
ONE, LLC d/b/a KW PROPERTY MANAGEMENT AND
CONSULTING, LLC, a Florida Limited Liability
Company; THE GRAND PRESERVE AT NAPLES LLC d/b/a
KW PROPERTY MANAGEMENT AND
CONSULTING, LLC, a Florida Limited Liability
Company; and MARCY KRAVIT, an individual,

       Defendants.

_____/

## PLAINTIFF'S RESPONSE TO KW DEFENDANTS' "MOTION TO DISMISS"

Plaintiff The Continental Group, Inc. ("TCG") in Response to the KW Defendants[1] "Motion to Dismiss" states as follows.

## I.   Introduction

The KW Defendants move to dismiss this action on the asserted ground that Plaintiff has failed to sufficiently plead its claim under the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, which is the basis for this Court's subject matter jurisdiction. The KW Defendants also move to dismiss Count IV, for Tortious Interference with Contractual Relationships,

---

1   As used herein, "KW Defendants" refers to the corporate defendants in this action, specifically KW Property Management, LLC, KW Holding One, LLC and The Grand Preserve at Naples LLC, each of which apparently did business under the fictitious name of "KW Property Management and Consulting" during the time period at issue in this action as alleged in the Complaint, see DE 1 ¶¶ 4-6. None of the KW Defendants alleges in their Motion to Dismiss or by separate Motion to Dismiss that it is not a proper party defendant in this action.

asserting Plaintiff has failed to state a claim under this Count.  The KW Defendants' contentions are without merit and dismissal of this action, or any of its Counts, pursuant to Fed. R. Civ. P. 12(b)(1) or (6) should be denied.[2]  As to the KW Defendants' contention that "[i]n order for the federal court to maintain jurisdiction in this action, The Continental Group…must plead and prove that it has stated a claim pursuant to" the CFAA, DE 57 1-2 (emphasis added), the KW Defendants are in error and seek to impose upon TCG a burden that the law does not.  As the Court has already found, because disputed issues under the CFAA are "elements of the claim rather than simply jurisdictional facts…the determination of these intertwined elements of the claim are for a jury to decide, rather than the Court on a subject matter jurisdiction attack".  DE 91 at 3.  The Court further noted, however, that Plaintiff would have to "prove all elements of its claims to obtain an injunction", including its CFAA claim.  DE 91 at 3 n.1.  Thus Plaintiff need not prove all elements of its CFAA claim to avoid dismissal on the KW Defendants' motion to dismiss, but does need to demonstrate a likelihood of success on the merits of these and its other claims in order to obtain appropriate preliminary injunctive relief.

In substantial part, however, the KW Defendants' Motion is not directed to dismissal pursuant to Rule 12(b)(1) or (6), but is directed to the likelihood of success on the merits of both Plaintiff's CFAA claim (Count I) and Plaintiff's Tortious Interference with Contractual Relationships claim (Count IV).  Thus the KW Defendants fail to address, in their Response to Plaintiff's Motion for Preliminary Injunction, the merits of TCG's CFAA and Tortious Interference with Contractual Relationships claims, but instead incorporate their Motion to Dismiss as their

---

2    Although the KW Defendants divide their arguments pertaining to dismissal between Fed. R. Civ. P. 12(b)(1) and 12(b)(6), they explicitly note that their 12(b)(1) contentions constitute facial and not factual attacks on subject matter jurisdiction, *see* DE 57 at 4 n. 2, and therefore are based upon the allegations in the complaint, presumed to be true, and not facts outside the four corners of the complaint.  In consequence, the Court is called upon to consider only the well-pleaded allegations of the complaint, taken as true for purposes of the KW Defendants' Motion to Dismiss, in

Response. *See* DE 58 at 5, 6. Because the KW Defendants' arguments as to the merits of Plaintiff's CFAA claim and Plaintiff's tortious interference with contractual relationship claim are set forth in the KW Defendants' Motion to Dismiss, Plaintiff will address those arguments on the merits in this Response. Also, because the KW Defendants expressly incorporate into the KW Defendants' arguments on these Counts Defendant Kravit's Response to Plaintiff's Motion for Preliminary Injunction and Kravit's Declaration, *see* DE 58 at 5, 6, Plaintiff will address here Kravit's arguments on the merits of these claims as well.[3]

II.     **Plaintiff has Properly Pled, and Has Demonstrated a Likelihood of Success on the Merits of, its Claim under the Federal Computer Fraud and Abuse Act.**

The CFAA specifically grants a party the ability to maintain a civil action against violators of the CFAA in federal court to obtain compensatory damages and injunctive relief. 18 U.S.C. § 1030(g). TCG has brought such a civil action against Defendants under sections 1030(a)(2)(C) and 1030(a)(4) of the CFAA. *See* Compl. Count I. These sections impose liability against a person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer," 18 U.S.C. § 1030(a)(2)(C), and a person who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…" 18 U.S.C. § 1030(a)(4).

The KW Defendants assert five grounds for dismissal and/or upon which they contend no likelihood of success on the merits has been shown as to Plaintiff's claim under CFAA.

---

deciding whether Plaintiff's CFAA claim survives that Motion to Dismiss, regardless of whether the grounds for dismissal are asserted under Rule 12(b)(1) or 12(b)(6).

3     In their Motion to Dismiss, the KW Defendants also expressly state that "KW incorporates, to the extent necessary, Kravit's legal arguments presented in her Motion to Dismiss". DE 57 p. 5. However Defendant Kravit presents no Motion to Dismiss but simply adopts the KW Defendants' Motion, stating in her filing simply that she "hereby adopts KW Defendants' Motion to Dismiss…in all respects that are applicable to Defendant Kravit". DE 61.

Specifically, the KW Defendants contend that Plaintiff has not adequately alleged, nor shown a likelihood of success on the merits, that:

1.  Plaintiff's computers at issue constitute 'protected computers' under the CFAA;

2.  Plaintiff satisfies the CFAA's $5,000 'loss' or 'damage' threshold as those terms are defined in the CFAA;

3.  Defendant Kravit engaged in unauthorized access or exceeded her authorized access to Plaintiff's computers;

4.  Defendant Kravit engaged in "fraud" as that term is understood in CFAA § 1030 (a)(4); and

5.  Defendant Kravit was an agent of the KW Defendants such that the KW Defendants may be liable under the CFAA for Kravit's actions.

As Plaintiff has more than adequately pled each of these elements, the KW Defendants' Motion to Dismiss this action in whole or in part should be denied; because the Court's jurisdiction is intertwined with the merits of Plaintiff's CFAA claim, so long as the CFAA claim has been adequately pled the KW Defendant's Motion to Dismiss that claim should be denied.  As to the merits of Plaintiff's CFAA claims, Plaintiff has also demonstrated a likelihood of success on the merits as to each of the five elements disputed by the KW Defendants, and has therefore satisfied the first requirement for preliminary injunctive relief as to Plaintiff's CFAA claim.

**A.  Plaintiff has sufficiently pled, and has demonstrated a likelihood of success on the merits, that its computers are 'protected computers'.**

The KW Defendants first argue that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), as Plaintiff has not sufficiently pled that its computers are 'protected computers' under the CFAA "[b]ecause there are no factual allegations that the computers were *used* in interstate commerce to cause 'loss' or 'damage'".  DE 57 at 7 (emphasis in original).  To the extent specific allegations regarding interstate communications are necessary, TCG alleges in the Complaint that "Kravit's laptop computer and TCG's computer databases accessed by Kravit clearly involved

4

interstate communication". DE 1 at ¶56. TCG also alleges in the Complaint that Sharon Tank used her TCG computer to access e-mail communications sent to her from KW, and that Kravit accessed and transferred information from TCG's computer network. DE 1 at ¶ 33, 38. Therefore, Plaintiff has alleged sufficient facts to satisfy the notice pleading standard as to whether the computers at issue constitute 'protected computers' under the CFAA, and dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) on this basis should be denied.[4]

The argument that the KW Defendants are really making in their "Motion to Dismiss", however, is that TCG's computers are not 'protected computers' under the CFAA as a matter of law – not that Plaintiff has failed to adequately to <u>allege</u> that the computers are 'protected computers' in the Complaint. *See* DE 57 at 5. More specifically, the KW Defendants assert that the use of TCG's computers in accessing the internet and for e-mail is not enough to make them 'protected computers' for purposes of the CFAA, but rather the alleged CFAA violation must arise directly from the computers' use in interstate commerce. *See* DE 57 at 6-7.

The KW Defendants are in error on both points. First, that the computers at issue were used to access the internet and were used in e-mail communications is alone sufficient to bring the computers within the protection of the CFAA as 'protected computers'. Second, the CFAA violation does not have to arise from the use of the computers in interstate commerce for the computers to constitute 'protected computers', and instead the CFAA applies to protect against

---

4   Even if the Court were to consider such factual allegations deficient, the proper course would be for the Court to grant Plaintiff leave to amend its complaint to allege that its computers and computer systems were used in interstate commerce or communication by the accessing of the internet and their use for e-mail communications. *See Paradigm Alliance, Inc.*, 248 F.R.D. at 602 n.6 (stating that if the factual allegations were deficient, the court would grant leave to file an amended counterclaim to contain the allegation that the party's computer was used in interstate commerce or communication). Such leave to amend would be pointless, however, for Defendants do not dispute the fact that the computers at issue were used for internet access and e-mail. Plaintiff has noted its reliance on this undisputed fact in its previously filings with the Court, *see* DE 35, 49-2, and therefore the Defendants are on notice of the factual predicate for Plaintiff's contention that the computers at issue are 'protected computers' under the CFAA.

misconduct resulting from unauthorized access or exceeding authorized access to those computers even if the misconduct is wholly intrastate in nature.

The CFAA defines a 'protected computer' as a computer "which is used in or affecting interstate or foreign commerce or communication…"  18 U.S.C. § 1030(e)(2)(B).  As Plaintiff previously cited, in *U.S. v. Trotter*, the Eighth Circuit cited the Supreme Court and other Circuit Courts in holding that because the "defendant admitted [that] the computers were connected to the Internet" -- which the court described as "an international network of interconnected computers" and "an instrumentality and channel of interstate commerce" -- the computers at issue "were part of a system that is inexorably intertwined with interstate commerce" and therefore were 'protected computers' under the CFAA.  478 F.3d 918, 921 (8th Cir. 2007) (citing *Reno v. ACLU*, 521 U.S. 844, 850 (1997); *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)).  The KW Defendants do not offer a principled basis for distinguishing this case,[5] and its conclusion has been followed in several subsequent decisions.  *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, 248 F.R.D. 598, 602 n.5 (D. Kan. 2008) ("A computer that provides access to worldwide communications [via the internet] would satisfy the element of interstate communications"); *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032-33 (N.D. Ill. 2008) ("a computer that provides access to worldwide communications through applications accessible through the internet qualifies as a 'protected computer') (cited by the KW Defendants as authority on what constitutes 'protected computer' under CFAA, DE 57 at 6).  In consequence, the undisputed fact that Kravit's TCG computer and

---

5   The KW Defendants attempt to distinguish *Trotter* as to the facts relating to the violation of the CFAA, which does not call into question the conclusion of the *Trotter* court, based in turn upon decisions from several other courts, that access to the internet qualifies a computer as a 'protected computer' for purposes of the CFAA.

TCG's computer systems were used to engage in e-mail communications[6] and to access the internet is sufficient to make them 'protected computers' for purposes of the CFAA.[7]

The KW Defendants' second argument is that Kravit's misconduct under the CFAA was not alleged to have occurred <u>using</u> the interstate communications of the internet or e-mail of the computers at issue and thus the computers were not 'protected computers' with respect to the CFAA claims in this action. The KW Defendants are in error as to this argument as well. The CFAA "does not ask whether the person who caused the damage acted in interstate commerce; it protects computers (and computerized communications systems) used in such commerce, no matter how the harm is inflicted." *United States v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005). Thus, "once the *computer* is used in interstate commerce, Congress has the power to protect it from a local hammer blow…." *Id.* (emphasis in original) (quoted in *Trotter*, 478 F.3d at 922).[8] Because the computers at issue are 'protected computers', whether the misconduct at issue in Plaintiff's CFAA claims occurred intrastate is irrelevant: as the Eleventh Circuit held in *Hornaday*, "Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a

---

6   Kravit in her declaration expressly states that she frequently sent her superiors and her team TCG information via e-mail from outside the office as well as from home, and thus admits to using her TCG laptop to access the internet and using TCG e-mail run off of TCG's computer system to transmit TCG information. In consequence, it is undisputed not only that Kravit's TCG laptop and TCG's computer systems had access to the internet and to e-mail but that Defendant Kravit utilized the internet and e-mail over the TCG computers at issue. *See* DE 60 ¶ 29.

7   The KW Defendants argue that "Congress did not intend" that a computer connected to the internet qualify as a 'protected computer' in enacting the CFAA. The Seventh Circuit has already considered and rejected this argument, holding that "it is the statutes [the members of Congress] enacted – not the thoughts they did or didn't have – that courts must apply". *United States v. Mitra*, 405 F.3d 492, 495 (7th Cir. 2005). The Seventh Circuit noted that the CFAA – as with many federal statutes – was written in general terms so that, as technology and communication abilities change, so does the scope of the CFAA's coverage. *Id.* Thus, "[a]s more devices come to have built-in intelligence, the effective scope of the statute grows." *Id.* Although "[t]his might prompt Congress to amend the statute, [it] does not authorize the judiciary to give the existing version less coverage than its language portends." *Id.* (citing *Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816 (1978)).

8   *Nordstrom Consulting Inc.*, a Northern District of Illinois case cited by the KW Defendants, does not hold to the contrary. Regardless of the holding of that case that the KW Defendants urge in their papers, it is a decision of the Northern District of Illinois and as such must follow *Mitra* as binding Seventh Circuit authority.

primarily intrastate impact." *Hornaday*, 392 F.3d at 1311. Thus Plaintiff has shown a likelihood of success on the merits of the element of its CFAA claim that the computers at issue are 'protected computers' as a matter of law.

**B.**     **Plaintiff has sufficiently pled, and has demonstrated a likelihood of success on the merits, that it suffered at least five thousand dollars in 'loss' or 'damage' as those terms are defined in the CFAA.**

The KW Defendants next argue that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff has not alleged a requisite 'loss' or 'damage' under the CFAA of more than five thousand dollars. Although Plaintiff need allege *either* 'loss' or 'damage' of more than five thousand dollars, Plaintiff has adequately alleged *both* 'loss' and 'damage' more than sufficient to satisfy notice pleading requirements, and dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) on this ground should be denied. As alleged in the Verified Complaint, Plaintiff hired a computer forensic expert to investigate former TCG employees' conduct with respect to TCG's 'protected computers' prior to their separation from TCG, and the cost of that expert's investigation exceeded six thousand dollars; such allegations constitute sufficient 'loss' under the CFAA. *See* DE 1 ¶¶ 50-56. Plaintiff also adequately alleged that Defendant Kravit's unauthorized access to TCG's confidential and proprietary information caused damage to the integrity of its information in excess of six thousand dollars; such allegations constitute sufficient 'damage' under the CFAA. *See* DE 1 ¶ 56. Therefore, TCG's allegations of 'loss' or 'damage' are sufficient to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(1).[9]

As with the issue of 'protected computers', however, the KW Defendants' argument

---

9    As with the KW Defendants' 'protected computer' arguments above, even if the Court were to consider such factual allegations deficient, the proper course would be for the Court to grant Plaintiff leave to amend its complaint. Again such leave to amend would be pointless, however, for the details of the actions of NetEvidence are set forth in the declaration of James Stanford Wilson in support of Plaintiff's Motion for Preliminary Injunction, and the KW Defendants are therefore on notice of the factual predicate for Plaintiff's contention that the requisite 'loss' or 'damage' pursuant to the CFAA has been suffered by Plaintiff.

regarding 'loss' or 'damage' under the CFAA is not about whether 'loss' or 'damage' is adequately alleged in the Complaint but is about whether what is alleged by Plaintiff to constitute 'loss' or 'damage' satisfies the statutory definitions of these terms as a matter of law.  Because the KW Defendants claim that 'loss' or 'damage' as these terms are defined in the CFAA has not been established, the KW Defendants suggest that Plaintiff cannot show a likelihood of success on the merits as to this element of its CFAA claims.  As the facts alleged establish both 'loss' and 'damage' of more than $5,000, Plaintiff has demonstrated a likelihood of success on the merits as to this element of its CFAA claims.[10]

The CFAA defines 'loss' to include "any reasonable cost to any victim, including the cost of responding to an offense [or] conducting a damage assessment . . . ." 18 U.S.C. § 1030(e)(11).  The KW Defendants entirely ignore this part of the CFAA definition of 'loss' and thus entirely fail to refute that the requisite statutory 'loss' has been shown in this case.[11]  "The cost of hiring an expert to investigate the computer damage is clearly a 'reasonable cost' sufficient to constitute 'loss' under the CFAA."  *Frees, Inc. v. McMillian*, No. 05-CV-1979, 2007 WL 2264457, at *3 (W.D. La. Aug. 6, 2007).  Likewise in *PharMerica, Inc. v. Arledge*, No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *7 (M.D. Fla. March 21, 2007), the court held that losses under the CFAA include expenses incurred

---

10  Defendant Kravit also asserts that "Plaintiff has not suffered any 'loss' or 'damage' from Kravit's actions, as defined by the CFAA", but other than setting forth this conclusory assertion offers no facts, argument or authority to support it.  *See* DE 59 at 8 and generally.  Therefore, the Court need not consider Defendant Kravit's assertion regarding 'loss' or 'damage' in considering whether a likelihood of success on the merits as to 'loss' or 'damage' under the CFAA has been shown.

11  The statutory definition of 'loss' recognizes two separate categories of losses as coming within the definition: (1) losses caused by "any reasonable cost to any victim" including "the cost of responding to an offense [or] conducting a damage assessment"; and (2) losses caused by an "interruption of service", including lost revenue and other consequential damages incurred because of such an interruption.  *See* 18 U.S.C. § 1030(e)(11).  Thus, contrary to the arguments of the KW Defendants, no interruption of service is required in order to satisfy the definition of 'loss', where, as here, the first category of losses provided for in the statutory definition is relied upon.  That statutory 'loss' may be established through this first category of losses that includes the cost conducting a damage assessment  is acknowledged through the many cases cited by Plaintiff above, including the post-*Lockheed* case of *PharMerica, Inc.*  Thus, the cases and arguments asserted by the KW Defendants as to why the statutory definition of 'loss' is not satisfied are simply inapposite and do not defeat this element of Plaintiff's CFAA claims.

to examine the laptop computer that had been assigned to the former employee and in determining what files had been copied.  *See also Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccaro*, No. 3:06-CV-2175, 2007 WL 1847435, at *5 (M.D. Pa. June 25, 2007) (holding time and resources spent and cost of hiring expert to research and assess unauthorized information and assets are costs explicitly identified in CFAA's definition of 'loss').  Thus, the costs TCG incurred in hiring NetEvidence, Inc. to conduct a damage assessment based on conduct of former TCG employees with respect to TCG's computers prior to their separation constitute 'loss' under the CFAA, and the amount of those costs undisputedly exceeds the $5,000 threshold for a CFAA claim.  Therefore Plaintiff has adequately demonstrated sufficient 'loss' as contemplated by section 1030(c)(4)(A)(i)(I) of the CFAA to establish its likelihood of success on the merits of this element.

'Damage' in turn is defined by the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  TCG has shown through the evidence offered in support of its Motion for Preliminary Injunction, and will establish through additional testimony at the preliminary injunction hearing, that valuable confidential files[12] were obtained from TCG's computer systems, which caused statutory 'damage' as it impaired the integrity of that confidential information.  Collecting confidential information through unauthorized means can constitute an impairment to the data's integrity for purposes of the CFAA's 'damage' definition.  *See, e.g.*, *HUB Group, Inc. v. Clancy*, No. Civ.A. 05-2046, 2006 WL 208684, at *3-4 (E.D. Penn. Jan. 25, 2006) (holding allegations of damage to integrity of computer database suffice to state claim under CFAA); *George S. May Int'l Co. v. Hostetler*, No. 04-C-1606, 2004 WL 1197395, at *4 (N.D. Ill. May 28, 2004) ("[w]e see no principled reason…why infringement of

---

12  To the extent Defendant Kravit attempts to assert in her declaration that certain of the files she accessed and acquired from TCG were not confidential or valuable information, TCG is moving to strike or disregard the pertinent paragraphs of Kravit's declaration for the reasons set forth in Plaintiff's Motion to Strike or, Alternatively, to Disregard.

copyrighted material taken from a protected computer system would not qualify as impairment of the integrity of the copyrighted information).[13]   Thus, although Plaintiff need not establish 'damage' under the CFAA because it has separately shown a 'loss' under the CFAA sufficient to meet the statute's jurisdictional threshold, Plaintiff nonetheless has adequately shown sufficient 'damage' under the CFAA as well for purposes of Plaintiff's Motion for Preliminary Injunction.

**C.    Plaintiff has sufficiently pled, and has demonstrated a likelihood of success on the merits, that Defendant Kravit engaged in unauthorized access and/or exceeded her authorized access to TCG's computers.**

Next the KW Defendants argue that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has not adequately pled that Defendant Kravit engaged in unauthorized access or exceeded her authorized access to TCG's computers.   Yet Plaintiff alleges in the Complaint the parameters of Kravit's authorized access to TCG's computer systems, and alleges that Kravit engaged in actions to access and obtain valuable data and information in November and December prior to Kravit's resignation that were without authorization or in excess of her authorized access based upon the parameters of Kravit's authorized access.  *See* DE 1¶¶ 24-30, 37-40.  Thus, Plaintiff has stated a claim and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

Once again, the real issue presented in the KW Defendants' Motion to Dismiss is Plaintiff's likelihood of success on the merits of its contention that Defendant Kravit engaged in 'unauthorized access' or 'exceeded' her authorized access to TCG's computers, as those terms have been defined

---

13   *See also Shurguard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126-27 (W.D. Wash. 2000) ("[t]he word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state" and an impairment of its integrity occurs when a former employee "infiltrate[s] the plaintiff's computer network" even though no data was physically changed or erased).   Although the KW Defendants argue that *Shurguard* "has not been followed by the modern and predominant trend of cases", the KW Defendants cite only one case that disagreed with *Shurguard* as to the meaning of "impairment to the integrity" of information in the statutory definition of 'damage', the case of *Resdev, LLC* from the Middle District of Florida.

and interpreted under the CFAA.[14]  Plaintiff has made clear that it is relying for its position that TCG's computers were accessed without authority or in excess of authority on TCG's written policies attached to TCG's Motion, authorizing access to TCG's computer systems and property "solely for the Company's purposes" and/or "for business use".  *See* DE 49-2 at 4-5, DE 3 at 6 & 11.[15]  Neither the KW Defendants, nor Defendant Kravit, point to any dispute or potential dispute of fact relating to TCG's written policies regarding the scope of permissible access to TCG's computers.  Instead the Defendants attempt to ignore those policies and rely upon case authorities in which there were no such policies and in which the permissible scope of access was determined based upon how the information accessed was actually used, applying agency principles.  Yet it is irrelevant to this case whether the reasoning of *Lockheed Martin Corp. v. Speed*, No. 6:05-CV-1580-ORL-31, 2006 WL 2683058,  (M.D. Fla. Aug. 1, 2006) (upon which Defendants attempt to rely) or instead that set forth in cases prior and subsequent to *Lockheed*, such as *PharMerica, Inc. v. Arledge*, No. 8:07-cv-486-T-26MAP, 2007 WL 865510 (M.D. Fla. Mar. 21, 2007)[16] is correct as the

---

14  The phrase "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18. U.S.C. § 1030(e)(6).  The CFAA does not, however, define "authorization" or "authorized access".  *See Hewlett-Packard Co. v. BYD:Sign, Inc.*, No. 6:05-CV-456, 2007 WL 275476, at \*12 (E.D. Tex. Jan. 25, 2007).

15  Although the KW Defendants state that  "[i]t appears…that Continental will rely on the Restatement (Second) of Agency…to support its contention that Kravit was not authorized to access its computer system once she allegedly breached her duty of loyalty to Continental while still employed by Continental", DE 57 at 10, 13, to the contrary, Plaintiff has made clear that it is relying for its position that TCG's computers were accessed without authority or in excess of authority on TCG's written policies attached to TCG's Motion, authorizing access to TCG's computer systems and property "solely for the Company's purposes" and/or "for business use".  *See* DE 49-2 at 4-5, DE 3 at 6 & 11. Thus, the KW Defendants' arguments relating to agency principles of loyalty, and their reliance upon the Middle District of Florida decision in *Lockheed Martin Corp. v. Speed*, No. 6:05-CV-1580-ORL-31, 2006 WL 2683058, at \*6 (M.D. Fla. Aug. 1, 2006), discussing such principles, are simply inapposite.
Defendant Kravit's arguments predicated upon *Lockheed,* and other case authorities concerning access without authority unrelated to written policies that define the scope of authorized access, are likewise inapposite.  *See* DE 59 at 5-6.  In particular, to the extent Defendant Kravit seeks to rely upon case authority holding that defining 'authorization' based upon the use of computer information is inconsistent with the CFAA where there is no employer policy that defines authorization based upon the use of the computer information, such case authority is inapposite to this action, as Plaintiff's policies, and not operation of agency principles, are what define Kravit's authorization in terms of her access of the information at issue.  *See* DE 59 at 6.

16  The plaintiff in *PharMerica, Inc.* alleged that its former employee, while still employed by the plaintiff, downloaded and copied the plaintiff's confidential and proprietary information – including pricing analyses, initiatives, and

propriety of utilizing agency principles to define the scope of authorized access under the CFAA. For it is undisputed that TCG defines the scope of permissible access to its computer systems through its written policies, and none of the Defendants provide any legal or factual basis as to why the scope of permissible access as set forth in those policies should not be determinative of the parameters of Defendant Kravit's authorized access to TCG's computer systems in this case.

Relying on written policies regarding the proper use of company computer systems to determine an employee's scope of authorized access is supported by the case of *Hewlett-Packard Co. v. BYD:Sign, Inc.*, No. 6:05-CV-456, 2007 WL 275476, at *12 (E.D. Tex. Jan. 25, 2007). In that case, the defendants argued that because the plaintiff had provided the defendants access to its computers and information, they could not have accessed the computers "without authorization" or have "exceeded their authorized access." In distinguishing *Lockheed* and related cases, the court focused on the plaintiff's allegations that not only had the defendants agreed to refrain from disclosing confidential information, but they were also prohibited from accessing information on the plaintiff's computer systems for personal gain pursuant to the plaintiff's "Standards of Business Conduct" policy. *Id.* The court held that, by alleging that the defendants accessed information for personal gain, the plaintiff "has alleged actual access without or in excess of authorization" sufficient to defeat the defendants' motion to dismiss. 2007 WL 275476 at *12-13.

In consequence, the issue of whether Defendant Kravit was without authorization or exceeded her authorization when she accessed TCG's confidential information in November and

---

customer service program manuals that the plaintiff had invested time and money in preparing – onto a portable flash drive two days before resigning to join a competitor. The plaintiff sought injunctive relief to prevent the former employee from using its confidential and proprietary information and requested that the court direct the former employee to return the information he took from the plaintiff. In holding that the plaintiff would likely succeed on the merits of his CFAA claim, the court stated that an employee who accesses his work computer for his own improper and illegal purposes – such as downloading the employer's confidential and proprietary information for his personal use so that he could later use that information to compete with the employer – does so "without authorization" from his employer. 2007 WL 865510 at *7.

December of 2008 prior to her resignation from TCG turns on whether Kravit at all times materials accessed TCG's computers and obtained TCG's information from those computers "solely for the Company's purposes" and/or "for business use". Although Defendant Kravit contends that "Kravit only copied, downloaded, and/or removed TCG company information in the ordinary course of performing her duties on behalf of TCG", DE 59 at 7, TCG is moving to strike or disregard the self-serving and conclusory assertions of Kravit in her declaration to this effect on evidentiary grounds; TCG is also moving for an adverse inference that certain of the files copied, downloaded and removed by Kravit immediately prior to her resignation were taken for use in her employment with TCG competitor KW with which Kravit had already accepted an offer of employment, based upon spoliation of evidence as to those files by Defendant Kravit. Finally, TCG will show through competent evidence at the preliminary injunction hearing that the circumstances under which Kravit accessed and removed information, and the specific information which she removed, belie her contentions that her actions were solely for TCG's business purposes. Because Plaintiff has demonstrated that its written policies properly supply the scope of permissible access to TCG's computers during the time period at issue as a matter of law, and has demonstrated and will further demonstrate at the preliminary injunction hearing that Kravit accessed TCG's computer systems under circumstances that were not authorized or were in excess of her authorization according to TCG's policies, Plaintiff has a likelihood of success on the merits as to this element of its CFAA claims.

**D.      Plaintiff has sufficiently pled, and has demonstrated a likelihood of success on the merits, that Defendant Kravit furthered an intended 'fraud' as that term is used in CFAA § 1030(a)(4).**

The KW Defendants argue that Plaintiff fails adequately to plead 'fraud' pursuant to TCG's claim under CFAA § 1030(a)(4), and in particular that Plaintiff fails to satisfy the requirement of

Fed. R. Civ. P. 9(b) that fraud be pled with particularity.

As set forth in Plaintiff's Motion for Preliminary Injunction, in the context of CFAA §1030(a)(4), the term 'fraud' "simply means wrongdoing", such that a plaintiff states a claim under that section by alleging that the defendant "participated in dishonest methods to obtain the plaintiff's secret information." *See Shurgard Storage Ctrs., Inc.*, 119 F. Supp. 2d at 1126. *See* DE 3 at 10 n.4. None of the Defendants dispute the propriety of this judicial interpretation of the term 'fraud' as used in CFAA § 1030(a)(4) in Response to Plaintiff's Motion for Preliminary Injunction. Instead, the KW Defendants dispute only the sufficiency of Plaintiff's pleading as to its CFAA § 1030(a)(4) claim.

More specifically, the KW Defendants argue that the special pleading rule regarding fraud applies to CFAA § 1030(a)(4) claims, and assert that that rule has not been satisfied. Plaintiff disputes whether Rule 9(b) applies to these CFAA claims, and notes that at minimum there is a dispute among the courts on the question. *See P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC*, No. 04-CV-4554, 2007 WL 708978, at *6 (D.N.J. Mar. 5, 2007) (holding "[d]espite the fact that the CFAA contains the term 'fraud,' Rule 9(b)'s heightened pleading standard does not apply to claims made under the statute," and citing several other cases holding that CFAA claims need only satisfy general notice pleading requirements).

If the Court should consider the heightened pleading standard to apply, however, Plaintiff respectfully suggests that it has satisfied that standard according to the allegations in the Complaint, as Plaintiff has identified  who was involved; when the actions occurred; what actions occurred; and why the actions were fraudulent. *See* Compl. at ¶¶ 20-23, 31, 32-34, 37 40, 41, 44, 45, 53, 55, 57-59 and 62. Should the Court not consider such allegations sufficient, the proper remedy would be to grant Plaintiff leave to replead to provide additional notice as to the particularity of Plaintiff's

claims, however repleading would be a pointless exercise under the circumstances as Defendants are well aware of the particular facts underlying Plaintiff's claims under CFAA § 1030(a)(4) based upon Plaintiff's Motion for Preliminary Injunction and declarations in support. In consequence, dismissal of Plaintiff's claim pursuant to CFAA § 1030(a)(4) for failure to plead sufficiently under Fed. R. Civ. P. 9(b) should be denied.[17]

As to Plaintiff's likelihood of success on the merits as to Plaintiff's CFAA § 1030(a)(4) claim, Plaintiff demonstrated in its initial Motion for Preliminary Injunction its likelihood of success on the merits as to Defendant Kravit's misconduct in engaging in dishonest methods to obtain TCG's valuable confidential information. As noted above, to the extent Defendant Kravit contends she did not act with dishonest methods to obtain TCG's information, TCG is moving to strike or disregard the self-serving and conclusory assertions of Kravit in her declaration to this effect on evidentiary grounds, and TCG is also moving for an adverse inference that several of the files copied, downloaded and removed by Kravit immediately prior to her resignation were taken for use in her employment with TCG competitor KW and thus by dishonest methods not in furtherance of TCG's business purposes. Finally, TCG will show through competent evidence at the preliminary injunction hearing that the circumstances under which Kravit accessed and removed information, and the specific information which she removed, belie her contentions that her actions were solely for TCG's business purposes. Plaintiff has demonstrated and will further demonstrate at the

---

17   The KW Defendants also argue that Plaintiff's CFAA claim is barred by the economic loss rule, which bars fraud claims that are not separate and independent from a breach of contract claim. Even assuming Plaintiff's CFAA claim is a claim for fraud – which is inconsistent with the jurisprudence cited above – Plaintiff's CFAA claim is not based upon the same allegations as Plaintiff's breach of contract claim against Defendant Kravit. To the contrary, Plaintiff's CFAA claim concerns Defendant Kravit's conduct in accessing without authorization or in excess of her authorization TCG's computers prior to her resignation to obtain valuable confidential information; Plaintiff's breach of contract claim concerns Kravit's conduct after her separation, including *inter alia*, her failure to return confidential information obtained, her use and disclosure of that information in violation of her restrictive covenant, and her employment with KW in violation of the restrictive covenant such that she has the means and opportunity to utilize the information she has wrongfully retained and used from TCG. Therefore the economic loss rule does not apply and provides no basis for limiting Plaintiff's claims in this action.

preliminary injunction hearing that Kravit used dishonest methods to access TCG's computer systems and thus furthered her misconduct, and Plaintiff therefore has a likelihood of success on the merits as to the 'fraud' element of its CFAA § 1030(a)(4) claim.

**E.    Plaintiff has sufficiently pled, and has demonstrated a likelihood of success on the merits, against the KW Defendants Plaintiff's CFAA claims against those Defendants.**

The KW Defendants argue that Plaintiff was required to plead with particularity an agency relationship cognizable under Florida law in order to state a claim against the KW Defendants under the CFAA, and has failed to do so requiring dismissal of the KW Defendants from Count I pursuant to Fed. R. Civ. P. 12(b)(6).  TCG adequately alleged that Kravit was acting in furtherance of KW's wishes as required by TCG's federal CFAA claim.  *See* DE 1 ¶¶ 31, 36, 37, 45, 53, 61, 62, and 63; s*ee also Shurgard Storage Ctrs., Inc.*, 119 F. Supp. 2d at 1123 (plaintiff's allegations that former employee had acted as an agent for the defendant subsequent employer while still employed by plaintiff was sufficient to survive defendant's motion to dismiss).  In consequence, dismissal of the KW Defendants from Count I should be denied.

Yet again the real issue presented by the KW Defendants in their 'Motion to Dismiss' is whether the KW Defendants may be liable as a matter of law for the conduct of Defendant Kravit. Although the KW Defendants argue that they cannot be liable according to Florida law of agency, federal common law of agency and not Florida agency law applies to the Plaintiff's federal CFAA claim.  In *Southeastern Mechanical Services, Inc. v. Brody*, the Middle District of Florida held that the plaintiff's allegations that the subsequent employer "implicitly induced and/or encouraged [the plaintiff's former employees] to access and use [the plaintiff's] information without authorization" were sufficient to demonstrate a likelihood of success on the merits of its claim against the subsequent employer.  2008 WL 4613046 at *14.  Plaintiff will show through competent evidence at the preliminary injunction hearing that this standard is amply satisfied such that Plaintiff is likely to

succeed on the merits of its CFAA claim against the KW Defendants.

### III. Plaintiff has Properly Pled, and Has Demonstrated a Likelihood of Success on the Merits of, its Claim against the KW Defendants for Tortious Interference with Contractual Relationships.

Finally, the KW Defendants argue that Count IV of Plaintiff's complaint, for tortious interference with contractual relationships against the KW Defendants, should be dismissed "as a matter of law", apparently because TCG has not alleged that its restrictive covenant agreements are valid or enforceable, or that the KW Defendants intentionally interfered with the contracts with knowledge that they were valid or enforceable.  As Plaintiff alleges at paragraph 88 of the Complaint that "[t]he KW Defendants have knowingly, intentionally, and without justification, interfered with TCG's rights under its agreements with Kravit and other former TCG employees", and attaches the contracts at issue to the Complaint, Plaintiff has satisfied its pleading obligations with respect to Count IV of the Complaint and dismissal of Count IV pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

To the extent the KW Defendants are once again seeking to challenge Plaintiff's likelihood of success on the merits of TCG's Tortious Interference with Contractual Relations claim through the KW Defendants' putative 'Motion to Dismiss', to prevail on a claim for tortious interference with a contract relationship under Florida law, TCG must show:  i) the existence of a business relationship between the plaintiff and a third person; ii) the defendant's knowledge of the relationship; iii) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and iv) damage to the plaintiff resulting from the third person's failure to perform.  *See, e.g.*, *Seminole Tribe of Fla. v. Times Publ'g Comp., Inc.*, 780 So.2d 310, 315 (Fla. 4th DCA 2001).

It is undisputed that there is a contractual relationship between TCG and its former employee Kravit, as well as former TCG employees Niemeier and Seidler, under which TCG has legal rights.[18] DE 1 Exs. A-C.  The validity and enforceability of those restrictive covenant agreements are addressed in Plaintiff's Replies to Defendants' responses to Plaintiff's Motion for Preliminary Injunction.  Assuming the validity and enforceability of those agreements, however, Plaintiff has demonstrated its likely success on the merits of its tortious interference with Contractual Relations Claim against the KW Defendants.

First, the KW Defendants do not contend, nor have they presented any evidence to demonstrate, that they were unaware of the existence of the restrictive covenant agreements at issue.  To the contrary, the KW Defendants have admitted that they were fully aware of the existence of TCG's agreements.  *See* DE 70-2 ¶ 4 (Declaration of Robert White).  Therefore the second element of Plaintiff's tortious interference claim is undisputedly met.

Notwithstanding the KW Defendants' knowledge of TCG's agreement with Kravit, the KW Defendants interfered with this agreement by soliciting and employing Kravit in violation of that agreement. DE 3 at 16.[19]  The KW Defendants have also interfered with Kravit's agreement, as well as the confidentiality restrictive covenant between Niemeier and TCG, by knowingly allowing or encouraging these employees to engage in the unauthorized use of confidential information belonging to TCG in violation of their confidentiality agreements with TCG, as TCG is prepared to demonstrate through competent evidence at the hearing.  Finally, the KW Defendants have interfered with restrictive covenant agreements of other TCG employees by soliciting them, while they were

---

18   Contrary to the suggestion by the KW Defendants, TCG does not allege a violation of restrictive covenants of Sharon Tang in TCG's Motion for Preliminary Injunction.

19   Although KW denies that it solicited Seidler, there is sufficient evidence on this record to cast doubt on KW's denial, including Seidler's admission that he was observed by his supervisor speaking to Mr. White just a few days before he sought employment at KW.  DE 58-5 Ex. D.

still employed by TCG, to become employed with the KW Defendants.  For all these reasons, the likelihood of success on the merits of Plaintiff's tortious interference with contractual relations claim has been demonstrated based on the applicable law and the facts as alleged by Plaintiff to be established through competent evidence at the preliminary injunction hearing.

## IV.    <u>Conclusion</u>

For the reasons set forth above, the KW Defendants' Motion to Dismiss should be denied in its entirety, and the Court should find based upon the law set forth above and the undisputed facts and the facts as alleged and to be shown at hearing, that Plaintiff has established a likelihood of success on the merits of Plaintiff's CFAA and Tortious Interference with Contract claims in this case.

Dated this  __16th__ day of March, 2009.              Respectfully submitted,

<u>*s/Joan Canny*</u>
Joan Canny
Fla. Bar No. 0492531
*E-Mail:*  *jcanny@morganlewis.com*
Jason Nickerson
Fla. Bar No. 0659568
*E-Mail:*  *jnickerson@morganlewis.com*
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
5300 Wachovia Financial Center
Miami, FL  33131-2339
Telephone:     (305) 415-3330
Facsimile:      (877) 432-9652

*Attorneys for Plaintiff The Continental
Group, Inc.*

## Certificate of Service

I hereby certify that on March 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

s/Joan M. Canny
Joan M. Canny

## SERVICE LIST

KW PROPERTY MANAGEMENT, LLC d/b/a KW PROPERTY MANAGEMENT AND CONSULTING, LLC, a Florida Limited Liability Company; KW HOLDING ONE, LLC d/b/a KW PROPERTY MANAGEMENT AND CONSULTING, LLC, a Florida Limited Liability Company; THE GRAND PRESERVE AT NAPLES LLC d/b/a KW PROPERTY MANAGEMENT AND CONSULTING, LLC, a Florida Limited Liability Company; and MARCY KRAVIT, an individual.

### Case No. 09-60202-CIV-COHN/SELTZER
### United States District Court, Southern District of Florida

Frank C. Simone, Esq.
Sherman Law Offices, Chartered
1000 Corporate Drive
Suite 310
Ft. Lauderdale, Florida  33334

*Attorneys for KW Property Management, LLC d/b/a KW Property Management and Consulting, LLC and KW Holding One, LLC d/b/a KW Property Management and Consulting, LLC*

***Served via CM/ECF***

Franklin Lewis Zemel, Esq.
Arnstein and Lehr, LLP
200 East Las Olas Boulevard
Suite 1700
Ft. Lauderdale, Florida  33301

*Attorneys for KW Property Management, LLC d/b/a KW Property Management and Consulting, LLC, KW Holding One, LLC d/b/a KW Property Management and Consulting, LLC, and The Grand Preserve at Naples LLC d/b/a KW Property Management and Consulting, LLC*

***Served via CM/ECF***

Gary W. Pollack, Esq.
Bretton I. Pollack, Esq.
Gary W. Pollack, P.A.
1260 SunTrust International Center
One Southeast Third Avenue
Miami, Florida  33131-1714

*Attorney for Defendant Marcy Kravit*

***Served via CM/ECF***