UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60202-CV-COHN

THE CONTINENTAL GROUP, INC.,

Magistrate Judge Seltzer

    Plaintiff,

vs.

KW PROPERTY MANAGEMENT, LLC d/b/a KW
PROPERTY MANAGEMENT AND CONSULTING, LLC;
KW HOLDING ONE, LLC d/b/a KW PROPERTY
MANAGEMENT AND CONSULTING, LLC; THE GRAND
PRESERVE AT NAPLES LLC d/b/a KW PROPERTY
MANAGEMENT AND CONSULTING, LLC; and
MARCY KRAVIT,

    Defendants.
_____/

## OMNIBUS ORDER RE SCOPE OF INJUNCTION AND BOND

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Further Clarification and Modification of Injunction [DE 172], Plaintiff's Motion for Order to Show Cause Why KW Should Not Be Adjudged in Contempt of Court's Preliminary Injunction Order [DE 220], Defendant's Motion for Clarification [DE 240], KW Defendants' Motion to Dismiss [DE 161], Defendant Marcy Kravit's Motion to Dismiss [DE 180], Plaintiff's Motion for Leave to File Sur-reply [DE 182] regarding KW Motion to Dismiss, Plaintiff's Motion for Leave to Amend and for Relief from Local Rule 15.1 requirement to replead entire complaint [DE 192], and Defendant's Motion for Evidentiary Hearing to Determine Amount of Bond [DE 245]. The Court has carefully considered the motions, responses, and replies thereto, and has heard the argument of counsel on September 21, 2009, and has reviewed the written closing arguments submitted by counsel [DE's 262, 263,

269, 270, 271, 276 and 279].

## I. BACKGROUND

The parties are competitors in the property management business.  Plaintiff The Continental Group ("Plaintiff" or "TCG") alleges that Defendant KW Property Management LLC ("Defendant" or "KW") hired away Defendant Marcy Kravit from Plaintiff and that she downloaded proprietary information from Plaintiff's computer system prior to her departure.   The Court previously granted in part Plaintiff's Motion for Preliminary Injunction [DE 150], and later entered additional orders clarifying the injunction [DE's 164 and 176].[1]  Defendant KW was initially enjoined from soliciting clients and/or employees of TCG for two years, while Kravit was enjoined from working for KW or any other property management firm in South Florida.  The initial injunction also contained injunctive relief against KW regarding TCG's confidential information, which at the time the Court found not to be contested by KW.  See Findings of Fact and Conclusions of Law and Order Granting Motion for Preliminary Injunction at p. 38-39 [DE 150].

After motions by the parties, the Court clarified the injunction to narrow the injunctive relief regarding solicitation of clients to focus on disgorgement of any benefit Kravit's hiring gave to KW, to "include not employing Kravit or using the confidential information that Kravit brought to KW, but also the remedy of not being able to solicit Kravit's former clients."  Order Granting in Part Motions to Clarify Injunction at p. 2 [DE

---

[1]  The full factual background and explanation of the pleadings in this case may be found in these three orders.

2

164]. The Court also modified in part the definition of "TCG's clients" and "any client of TCG" to include "any property for which any information was brought by Kravit to KW (meaning any information found on the KW servers or KW laptops used by Kravit or anyone else at TCG, if that information came from Kravit)." Id. at p. 3. That clarification order did not specifically address the portions of the injunction related to retention, use or deletion of TCG's confidential information.[2]

In the present round of motions, Plaintiff seeks clarification and now an order to show cause that KW is violating the injunction. The parties continue to have disputes over discovery that they assert are entwined with disputes over the scope of the injunction.

The injunction as modified reduced the limitation on KW's solicitation efforts to those properties that Marcy Kravit worked on (which are easily identifiable), and those properties which Kravit brought confidential information from TCG to KW. The scope of this latter category depends upon what is found in KW's computers and servers. Plaintiff contends KW has delayed such discovery to its advantage in soliciting clients that Plaintiff believes are part of the injunction but KW believes are outside the scope of the injunction.

The Court held an evidentiary hearing in which Plaintiff did not put forth sufficient evidence of any injunction violation regarding solicitation of properties.

---

[2] KW also moved for modification in the form of dissolution of the entire injunction order based upon their termination of Marcy Kravit [DE 157]. The Court denied this motion. Order Denying KW's Motion to Modify or Reconsider Preliminary Injunction [DE 176].

Rather, Plaintiff focused on alleged failures of KW to disgorge confidential information. KW attempted to put into evidence TCG information allegedly abandoned at properties that changed management companies from TCG to KW to support its contention that none of the TCG information in KW's possession is confidential.

## II. DISCUSSION

### A.  Plaintiff's Motion for Order to Show Case that Injunction Violated

Plaintiff seeks the Court to issue an order to show cause finding KW in contempt for violating the Court's Order by: 1) continuing to possess, use and disclose TCG propriety information; 2) failing to take efforts to identify TCG clients for which KW has received confidential information; 3) failing to search for resumes of TCG employees that KW has in its possession; and 4) taking a "blind eye" to violations of the injunction by KW's agents and employee.  Plaintiff details its contacts with KW counsel from May 21, 2009 through the filing of this motion on July 6, 2009.  See Plaintiff's Expedited Motion for Order to Show Cause Why Defendant KW Should be Adjudged in Contempt at pp. 9-16 [DE 220].  Plaintiff does not make specific allegations of violations by pointing out wrongful solicitation, except as to one instance regarding the Luxuria property.  Plaintiff does allege that KW has failed to comply with Magistrate Judge Seltzer's order for a status report.  That status report was filed on time (see DE 212), but Plaintiff argues it is inadequate.  KW recently filed an Updated Status Report after the filing of written closing arguments describing the efforts of its undisclosed consulting forensic expert and its principals to comply with the injunction.  See DE 272

and 273.

In response to the motion for order to show cause, KW asserts that Plaintiff has not stated any specific violation and comes quite short of the clear and convincing standard required for a finding of contempt.  See Reynolds v. McInnes, 338 F.3d 1201, 1211 (11th Cir. 2003).  KW describes its attempts to comply with the injunction.  KW's Response to Plaintiff's Motion for Order to Show Cause at p. 6 [DE 224].  KW states that it is not required to conduct a "thorough" search of its computers, but that it is methodically working on compliance.  KW notes that the injunction provision banning altering or deleting the information has hindered its search, as any attempt to access information changes the metadata associated with that electronic document.

With regard to the alleged solicitation ban violation, KW describes the details of its contacts with Luxuria, a property in Boca Raton, explaining its position as to why its contacts are not a violation of the injunction.  This description reveals details of another property formerly operated by TCG that switched to KW prior to the litigation.  The Court is aware from the record in this case that TCG and KW are major and significant competitors in the condominium management business, with properties changing hands more than infrequently as association boards seek to lower their costs by getting competing bids for management contracts that come up for renewal every few years.

In determining whether the injunction has been violated, it is important to note that KW has made attempts to comply with the various parts of the Court's injunction.  After the initial clarification by the Court in the spring, KW had agreed to hire TCG's forensic computer expert, but TCG ended up rejecting that workshare proposal.  KW

did retain its own forensic consultant, though KW has not disclosed this expert as he or she is presently a non-testifying consulting expert.

Upon review of the record as a whole, including the testimony at the September 21, 2009 hearing, the Court concludes that Plaintiff has not met its burden for the Court to issue an order to show cause why KW should not be held in contempt.

### B.   Motions for Clarification/Modification of Injunction

Both sides have moved to clarify and/or modify the injunction.  Plaintiff asserts that it cannot narrow its confidential client list because it does not know what information regarding its customers exist on KW's computers and servers as there has been only limited discovery.  Plaintiff proposes to have KW, at KW expense, hire a forensic computer consultant to find and remove all TCG documents on KW's computers and servers, and then for counsel of both sides to retain that information for the course of the litigation, and for that information to be used to determine the scope of the solicitation ban regarding TCG customers.  KW responds by stating that it has attempted to work with Plaintiff on several occasions to accomplish this task, but that Plaintiff has thwarted such attempts at cooperation.

Defendant seeks clarification regarding information that TCG leaves behind at properties that KW takes over.  At the hearing, KW attempted to admit into evidence particular binders and information seemingly belonging to TCG that TCG left at certain properties.  KW argues that it cannot return the TCG information left on the association's computer without accessing and altering the metadata, which would

violate part of the injunction. KW also argues that this TCG information is abandoned and is thus critical evidence to its defense that TCG's information is not in fact confidential. KW points out the impossibility of complying with the injunction's directive to both return electronic documents but not alter or delete those documents from its servers. Finally, and perhaps most importantly, KW asserts that any TCG information it obtains from a non-Kravit source, such as the abandoned documents, are outside the scope of the injunction and the causes of action and do not have to be disgorged.

Plaintiff asserts that the abandoned information argument is irrelevant, as the purported information actually belongs to the community association, and that KW failed to provide an evidentiary foundation for the TCG materials allegedly found at a turned-over property. Plaintiff proposes that KW hire a "qualified computer forensic consultant" to identify the TCG information in KW servers, laptops, and other electronic devices, make a forensically sound copy, and then delete the information from KW's computers so as to disgorge it from KW's potential use in compliance with the injunction.

In reply, KW argues that the injunction does not require KW to compile the "Do Not Compete Lists," and that KW has made its servers available to TCG. TCG argues that the ghost image of the servers does not provide the full search access required to truly determine whether TCG documents are accessible to KW. KW relies on its arguments that Plaintiff is seeking undiscoverable documents in its quest for unfettered access to KW's computers.

It would appear that the crux of this dispute revolves around the disputed scope

of the injunction.  On the one hand, the Court agrees with KW that the injunction must be clarified regarding their twin duties to both return confidential, proprietary or valuable information of TCG and not modify or delete such information.  However, TCG should be able to verify the existence or non-existence of such information in the first place.  While the Court would also tend to agree with KW that if they possess TCG documents that KW can show were obtained from associations formerly managed by TCG, that information is not confidential, however, KW also acknowledges that this is an ultimate question of fact that will be decided by a jury at the trial of this case.  Thus, the complete universe of TCG documents in KW's possession must be disclosed, so both sides can argue later whether those documents are in fact confidential.  KW also asserts that the ambiguity in the do not solicit list and delay in clarifying this list works to TCG's advantage, in that KW is forced to limit their marketing and solicitation activities in fear of violating the injunction.

### C.  Modified Injunction Language

The Court concludes that the injunction language must be modified in light of the above considerations.  In that regard, paragraph (c) of the initial injunction language at p. 39 of docket entry 150, is modified to add the following at the end of paragraph c: "except as necessary to comply with any other part of this injunction."  In that regard, Defendant is ordered to remove at its own expense from its computers, servers, and other electronic data storage devices, including portable devices, all documents and any electronically-stored information obtained from the Plaintiff, whether or not determined at this point to be confidential, including a search of all email boxes for any emails sent by, received from or forwarded from Marcy Kravit between November 1,

2008 and April 29, 2009.  Defendant shall engage a computer forensic expert to perform this removal.  KW's counsel shall retain a copy of these documents and electronically-stored information for use in defense in this case, and, if any documents are later not proven by TCG to be confidential, those documents may be returned to KW.  KW's counsel must deliver a copy of these documents and electronically-stored information, including email information, to counsel for TCG by December 1, 2009.  The information produced in compliance with the injunction shall be labeled "Confidential -- Attorney's Eyes Only," and shall not be used by TCG in its business, but rather is produced solely for use by its counsel in this litigation.

### D.  Motions to Dismiss and Motion to Amend

In the order granting in part the motion for preliminary injunction, the Court also granted in part the motion to dismiss Plaintiff's Computer Fraud and Abuse Act ("CFAA") claim.  Plaintiff filed an Amended Complaint after this ruling, adding certain allegations and re-pleading the CFAA claim in order to preserve both appellate rights and to maintain supplemental jurisdiction of this Court over the remaining state court claims that are the basis for the preliminary injunction.  Defendants move to dismiss the re-plead CFAA claims.  KW also seeks the Court to dismiss the state law claims due to lack of subject matter jurisdiction, and not invoke discretionary supplemental jurisdiction.   Plaintiff seeks the Court to state that Plaintiff has preserved its ability to appeal the dismissal of the CFAA claim.

Plaintiff also filed a motion for leave to file a Second Amended Complaint to add additional factual allegations as well as three new claims stemming from post-injunction conduct of KW and Kravit.  These new claims attack the general releases between KW

and Kravit, which Plaintiff alleges eliminates its ability to recover attorney's fees under the state statutory claim for breach of a restrictive covenant.  Kravit agreed to release KW from the indemnification provision in her employment contract, which Plaintiff alleges will make Kravit judgment-proof and is a conspiracy to keep Plaintiff from recovering its attorney's fees from KW.  The new claims are Third-Party Beneficiary Claim (Count V), declaratory judgment that release is illegal or void (Count VI), and Conspiracy to Defraud (Count VII).  Plaintiff also seeks to file the new allegations and claims as an addendum to the current First Amended Complaint, but in the alternative, would file a new Second Amended Complaint , but seeks to avoid a cycle of re-pleading the CFAA claim and motions to dismiss by having the Court clarify that the CFAA claim need not be included for the Court to maintain supplemental jurisdiction.

In response, both Defendants point out that Plaintiff did not fully comply with the pre-filing conference requirement of Local Rule 7.1.A.3, noting that TCG's counsel sent an email just a few hours before filing her motion to amend.  Defendant KW makes a brief argument that the third-party beneficiary claim is futile.  In reply, Plaintiff argues against the futility of amendment argument, and also notes that given Defendants' opposition to the motion to amend, further conference under the Local Rules would itself be futile.

Upon reviewing the briefs on this issue, the Court concludes that Defendants' motions to dismiss the CFAA claim should be granted on the same grounds as stated in the prior order regarding the initial Complaint, but the Court will continue to retain supplemental jurisdiction.  The Court is unpersuaded by Plaintiff's attempt at reconsideration of the dismissal of the CFAA claim.

Turning next to Plaintiff's motion to amend, Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires." In construing Rule 15(a), the Supreme Court has held that

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court concludes that Plaintiff's motion for leave to file a Second Amended Complaint be granted. However, the Court denies Plaintiff's motion for relief from Local Rule 15.1 and requires the filing of a new Second Amended Complaint containing all claims, including the CFAA claim already plead, though the Court will dismiss the CFAA claim in the Second Amended Complaint on the same grounds as before. In this way, there is no question regarding supplemental jurisdiction. In addition, because Defendants are entitled to file a motion to dismiss the new claims if they so choose, simply allowing Plaintiff to file an addendum to its First Amended Complaint without the filing of a new complaint would be confusing for the record.

### E. Amount of TCG Injunction Bond as to KW

The Court previously ruled that Plaintiff must post a $150,000 injunction bond as to Defendant Marcy Kravit. Defendant KW elected to defer seeking a separate bond. Plaintiff thus posted one $150,000 bond "for Defendants." See DE 193. Defendant KW moves to strike this bond as it is error for the bond as written by Plaintiff to refer to both "Defendants." Plaintiff opposes the motion in a one sentence response that the bond

11

as filed is reasonable. At the close of the September 21, 2009 hearing, the Court denied the motion to strike the bond as it is clear it only pertains to Defendant Marcy Kravit.

Defendant KW now seeks the Court to establish a bond for TCG to post as to KW's losses if the injunction is determined to be improper. Although KW initially moved for the Court to hold an evidentiary hearing on the amount of bond, KW has now withdrawn the hearing request [DE 279]. KW asserts that though it terminated Kravit's employment, it stands to lose substantial business and incur significant costs if the injunction is eventually overturned. KW's initial motion did not suggest an amount of the bond. Plaintiff opposes the motion and requested that the Court should enter a briefing schedule as it did for the bond as to Marcy Kravit. At the end of the September 21, 2009 hearing, the Court directed KW to file a motion in support of a specific amount of bond.

KW's memorandum filed in response to the Court's request seeks an bond of $3 million [DE 269], while TCG asserts that only a $50,000 bond is required [276]. KW provides a breakdown of its estimated damages, while TCG attacks the evidentiary basis of the numbers. The amount of security for issuance of a preliminary injunction "is a matter within the discretion of the trial court. . . [, and] the court may elect to require no security at all. <u>Bellsouth Telecommunciations, Inc. v. MCIMetro Access Transmission Services</u>, 425 F.3d 964, 971 (11th Cir. 2005), quoting <u>City of Atlanta v. Metro. Atlanta Rapid Transit Auth.</u>, 636 F.3d 1084, 1094 (5th Cir. Unit B 1981). Rule 65(c) states that the security shall be in a sum "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been

wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); <u>Milan Exp., Inc. v. Averitt Exp., Inc.</u>, 208 F.3d 975, 978-79 (11th Cir. 2000). The "burden is on the party seeking security to establish a rational basis for the amount of a proposed bond." <u>International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.</u>, 441 F.Supp.2d 552, 566 (S.D.N.Y. 2006).

KW asserts that it has already lost $218,537 due to the inability to respond to five requests for it to bid for managment contracts at five specific properties. KW also argues that it will lose approximately $672,423.11 as a result of having to shut down its statewide marketing efforts; $470,696.18 as a result of negative implications of being involved in this lawsuit; $139,123.80 from loss of ancillary services it performs for properties it manages; $94,311.59 in reduced productivity of its sales force; and $1.1 million in attorneys fees ($500,000 spent to date). These numbers are supported by the Declaration of Robert C. White [DE 269-1]. While these amounts total around $2.7 million, KW seeks a bond in the amount of $3 million.

TCG attacks these numbers as based upon complete speculation regarding lost business and as attorney fees which under federal practice cannot be considered part of the "costs and damages" under Rule 65(c). On the attorney's fees issue, KW asserts that because the injunction is based solely upon state law causes of action, attorney's fees should be included because Florida law allows such recovery for a wrongful injunction. TCG asserts that because Rule 65 is a rule of procedure, federal law must govern this issue. KW argues that because the Court considered in part Marcy Kravit's attorney's fees in computing Plaintiff's bond as to Defendant Kravit, the Court must do so again. Plaintiff notes that attorney's fees are recoverable by state

13

statute governing breach (or not) of a contract not to compete, whereas its tortious interference claim against KW does not provide either side with recovery of attorney fees.

In this instance, the Court agrees with Plaintiff that it will not add KW's attorney's fees into the amount for security, as generally attorney's fees are not considered "costs" under the Federal Rules of Civil Procedure, and, attorney's fees are not recoverable for tortious interference claims.

As to the amount of the bond, any attempted computation of lost business, particularly of business not currently under contract, is speculative in nature. However, as KW asserts, the standard in determining an injunction bond is only rational basis. Some of the business leads KW is not pursuing would turn into profitable business, but not all of those leads would do so. The record in this case does reflect that there are not that many companies that provide condominium management services for large (over 100 units) buildings, and that TCG is the largest company in this small group. Thus, where a property is seeking bids to move away from TCG's services to another company, KW stands a good chance of getting that business. KW assigns a 65% success rate to those bids and marketing efforts. The Court concludes that this number is too high, and instead finds a 40% success rate to have a more rational basis. By reducing the $1,595,091 in claimed lost profits by 25%, the Court arrives at an amount of $1,196,319.

The Court concludes in its discretion that KW has met its burden to establish a rational basis for a $1 million bond to cover the potential payment of such costs and damages as may be incurred or suffered by KW, if it is found to have been wrongfully

14

enjoined or restrained in its business.  At this stage of setting a bond, Plaintiff is not entitled to an evidentiary hearing contesting the amount of bond, following the briefing of the issue by the parties.

### III.  CONCLUSION

The Court again hopes that these parties will see the value to their clients by attempting to work together for the remainder of this litigation, and reminds the parties that disputes over discovery should be worked out between the parties, with resort to discovery motions as a last resort.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Further Clarification and Modification of Injunction [DE 172] is hereby **GRANTED in part**, as explained above;

2. Plaintiff's Motion for Order to Show Cause Why KW Should Not Be Adjudged in Contempt of Court's Preliminary Injunction Order [DE 220] is hereby **DENIED**;

3. Defendant's Motion for Clarification [DE 240] is hereby **GRANTED in part** as explained above;

4. KW Defendants' Motion to Dismiss [DE 161] is hereby **GRANTED in part** as to the CFAA claim in Count I and **DENIED** in all other respects;

5. Defendant Marcy Kravit's Motion to Dismiss [DE 180] is hereby **GRANTED** as to the CFAA claim in Count I;

6. Plaintiff's Motion for Leave to File Sur-reply [DE 182] regarding KW Motion to Dismiss is hereby **GRANTED**;

7. Plaintiff's Motion for Leave to Amend [DE 192] is hereby **GRANTED**;

8. Plaintiff's Motion for Relief from Local Rule 15.1 requirement to replead entire complaint [DE 192] is hereby **DENIED**;

9. Plaintiff shall separately file its proposed Second Amended Complaint no later than November 6, 2009 as a stand-alone docket entry;

10. The claim under the CFAA may be included but will be dismissed on the same grounds as before;

11. Defendant's Motion for Evidentiary Hearing to Determine Amount of Bond [DE 245] is hereby **DENIED**;

12. Based upon the parties' post-hearing briefing, Plaintiff shall file a bond of $1 million for the injunction against KW no later than November 10, 2009.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 30th day of October, 2009.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF