IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:09-60202-CIV-COHN-SELTZER

THE CONTINENTAL GROUP, INC.
A Florida Corporation,

      Plaintiff,

v.

KW PROPERTY MANAGEMENT, LLC
d/b/a KW PROPERTY MANAGEMENT
AND CONSULTING, LLC, a Florida
Limited Liability Company, and MARCY
KRAVIT, an individual,

      Defendants.
_____/

**MOTION TO DISMISS COUNTS V-VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT [DE 283] AND MOTION TO TOLL TIME TO RESPOND TO REMAINDER OF SECOND AMENDED COMPLAINT**

Defendant, KW PROPERTY MANAGEMENT, LLC ("KW"), by and through its undersigned counsel, file its Motion to Dismiss Counts V-VII of Plaintiff's Second Amended Complaint [DE 283] and Motion to Toll Time to Respond to Remainder of Second Amended Complaint, and in support thereof states as follows:

**MOTION TO DISMISS**

INTRODUCTION

Counts V-VII of TCG's Second Amended Complaint are an example of the hypocrisy of TCG's arguments and TCG's hurling of preposterous accusations. On the one hand, TCG claims that it has been harmed by Marcy Kravit's employment agreement with KW (Count IV – tortious interference with contractual relationships), and on the other hand, TCG claims that it is the intended third party beneficiary of the *very same* employment agreement (Count V – third party

beneficiary claim). How can TCG be the intended third party beneficiary of an employment agreement that TCG claims it was harmed by? TCG's arguments are entirely implausible and illogical.

It is also noteworthy that, before TCG initiated the lawsuit, TCG sent a letter to KW stating that if KW continues to employ Kravit, TCG will consider KW to be intentionally interfering with its contractual relationships with a former employee.[1] This lawsuit started because KW hired Kravit and TCG wanted KW to fire Kravit. Now that KW has terminated Kravit's employment, TCG is complaining that KW terminated Kravit.

## STANDARD OF REVIEW

Rule 12(b)(6) provides that "dismissal of a claim is appropriate when 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *See Behrman v. AllState Life Ins. Co.*, 2005 U.S. Dist. LEXIS 7262 at *6 (S.D. Fla. Mar. 23, 2005) (citing *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994)). "A motion to dismiss under Rule 12(b)(6) tests not whether the Plaintiff will ultimately prevail on the merits, but rather whether the Plaintiff has properly stated a claim." *See Behrman*, 2005 U.S. Dist. LEXIS 7262 at *5. When ruling on a motion to dismiss under Rule 12(b)(6), the Court must "accept the Plaintiff's allegations in the Complaint as true, and view those allegations in a favorable light to determine whether the Complaint fails to state a claim for relief." *Id.* at *6.

### *"Harry Pepper"*

The Court must also consider all the exhibits attached to and incorporated into the complaint when ruling on a motion to dismiss. *Harry Pepper & Assoc. v. Lasseter*, 247 So.2d 736 (Fla. 3d DCA 1971). "If there is an inconsistency between the general allegations of material

---

[1] This is the letter that TCG references in ¶ 46 of its Second Amended Complaint, which she sent to KW on December 24, 2008.

8775459.3

facts in the . . . complaint and the specific facts revealed by the exhibit attached or referred to in the complaint . . . they have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable." *Century Land Dev., L.P. v. FFL Dev., LLC*, No. 07-14377-CIV-MOORE, at * 5 (S.D. Fla. Apr. 24, 2008)(citing *Harry Pepper & Assoc.*, 247 So.2d at 736-37). TCG's allegations contradict the employment agreement which TCG attached to its Complaint as Exhibit "E," thus, the Court should focus on the terms of the employment agreement, and not TCG's characterization of the employment agreement, when ruling on the Motion to Dismiss.

ARGUMENT

**I.     TCG Has Not Adequately Plead That TCG Was a Third Party Beneficiary of Kravit's Employment Agreement With KW**

In order to state a cause of action for breach of a third party beneficiary contract, TCG must plead that (1) there was a contract between Kravit and KW[2]; (2) Kravit and KW manifested a ***clear intent to primarily and directly benefit TCG***; (3) either Kravit or KW breached the contract; and (4) TCG incurred damages as a result of the breach. *See Jenne v. Church & Tower, Inc.*, 814 So.2d 522, 524 (4th DCA 2002).

   A.     The Employment Agreement Demonstrates That Kravit and KW Did Not Manifest a Clear Intent to Primarily and Directly Benefit TCG

"Florida law looks to [the] nature or the terms of a contract to find the parties' clear or manifest intent that it be for the benefit of a third party." *Id.* at 524. (citations omitted). The language used in the contract is the best evidence of the intent and meaning of the parties. *Id.*; *see also Horizon Images, Inc. v. Delta Color Graphics, Inc.*, 639 So.2d 186, 187 (Fla. 4th DCA

---

[2] Although KW is not challenging this element for purposes of its Motion to Dismiss, if Count V is not dismissed, KW would take the position that a contract between Kravit and KW did not exist because KW was fraudulently induced into entering into the employment agreement with Kravit. Thus, the contract is void *ab initio*.

8775459.3

3

1994)("[T]here must . . . be a ***clear intention*** in the contract between [the contracting parties] to ***directly*** and ***substantially*** benefit [the third party], in order for the [third party] to sue on the third-party beneficiary theory")(emphasis added). Thus, for purposes of the Motion to Dismiss, the Court must look to the employment agreement itself (and not TCG's re-characterization of the employment agreement in its Second Amended Complaint) to determine whether or not TCG was an intended third party beneficiary of the employment agreement.

Paragraph 14 of the employment agreement demonstrates that the employment agreement was designed solely for Kravit's and KW's benefit, and not for TCG's benefit. Paragraph 14 of the employment agreement states that

> [t]he rights and obligations of [KW] under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of [KW]. [Kravit] acknowledges that the services to be rendered by her are unique and personal. Accordingly, she may not assign any of her rights, duties or obligations under this Agreement.

*See* Exhibit "A" at 11. The employment agreement itself states that the agreement is for personal services, and none of her rights, duties, or obligations can be assigned to a third party. Because the contract was designed solely for KW's and Kravit's benefit, TCG cannot maintain an action as a third party beneficiary. *See Am. Empire Ins. Co. of S. Dakota v. Fidelity and Deposit Co. of Maryland*, 408 F.2d 72, 75 (5th Cir. 1969)("When a contract is designed solely for the benefit of the formal parties thereto, third persons cannot maintain an action thereon, even though such third persons might derive some incidental or consequential benefit from its enforcement").

Further, courts have held that a promise to indemnify is a promise running to the indemnitee, in this case Kravit, and is not ordinarily construed as a contract for the benefit of third parties. *Boston Metals Co. v. The S/S Winding Gulf*, 349 U.S. 122, 126 (1955); *see also Simons v. Tri-State Cons. Co.*, 655 P.3d 703, 708 (Ct. App. Wash. 1982)("In general, only an

indemnitee or someone in his right is entitled to sue on a contract of indemnity, and thus a third party is not entitled to sue on an indemnity contract unless he is able to prove that the contract is not merely for indemnity but also creates a *direct* obligation in its favor")(emphasis added).

Paragraph 11 of the employment agreement states,

> [KW] shall indemnify and hold harmless [Kravit] for all claims or suits arising out of or in connection with [Kravit's] performance of duties under this Agreement and for any claims or suits arising during the course or scope of [KW] conducting business, with the exception of [Kravit's] gross negligence or intentional misconduct. [KW] expressly acknowledges that [Kravit] is a party to an existing non-solicitation, non-competition, anti-kcikback, and confidentiality agreement with competing business [TCG]. [KW] acknowledges it had reviewed an unexecuted and purported version of said agreement between [Kravit] and [TCG] and [KW] agrees to hire [Kravit] subject to said agreement. [KW] shall indemnify [Kravit] from all claims or suits arising out of or in connection with [Kravit's] non-solicitation, non-competition, anti-kickback, and confidentiality agreement with competing business [TCG]. The scope of indemnity under this section shall be to the fullest extent possible, and shall include payment by [KW] (or [KW's] insurance carrier) of all reasonable legal fees and costs, as they become due.

*See* Exhibit "A" at 10. Paragraph 11 of the employment agreement reveals that TCG is *not* a third party beneficiary. This provision is similar to the following illustration from the Restatement of Contracts, which supports the notion that TCG is not an intended third party beneficiary:

> B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D, and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries . . .; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries.

Rest. 2d Contracts § 302(2).

The mere fact that TCG's name appears in the indemnification provision of the employment agreement does not, by itself, make TCG an ***intended*** beneficiary of the employment agreement. This is especially so where the very agreement at issue is the source of TCG's tortious interference claim! In *Computer Center, Inc. v. Vedapco, Inc.*, the appellants entered into an indemnification agreement holding the purchaser of its assets harmless as against the appellant's creditors, one of which was the appellee. 320 So.2d 404, 407 (Fla. 4th DCA 1975). The court held that the indemnity contract was for the benefit of the purchaser only, and not for the benefit of third parties such as the appellee, even though the contract provided that the appellants would indemnify the purchaser against the appellant's creditors.

Further, the mere fact that Kravit had potential liability to TCG at the time the employment agreement was executed is insufficient to establish third-party beneficiary status. *See USCS ATB, LLC*, 2008 WL 2950601 ("Plaintiffs merely assert that because potential liability to the plaintiffs existed at the time the indemnification agreement was created, their indemnification claim should come as to no surprise [to the indemnitor]. An indemnitor's mere awareness . . . however, is insufficient to establish third-party beneficiary status"); *see also Forcier v. Cardello*, 173 B.R. 973, 985 (D.R.I. 1994)("A promissor's mere awareness that someone other than the promise may derive a benefit from the promisor's performance under the contract is insufficient to cloak that third party with the mantle of intended beneficiary").

<u>B.</u>     <u>TCG Has Not Alleged That Either KW or Kravit Breached the Employment Agreement</u>

One of the elements of a cause of action for breach of a third party beneficiary contract is a breach by one of the parties to the contract, in the instant case, KW or Kravit. *See Jenne*, 814 So.2d at 524. However, TCG did not, and could not in good faith, plead that there was a breach of the employment agreement, because the parties had the right to terminate the employment

8775459.3

6

agreement *for any reason* pursuant to paragraph 6 of the employment agreement, without giving notice to any third party, including TCG. *See* Exhibit "A" at 7. Paragraph 6 of the employment agreement also provides that Kravit shall furnish a general release, which was pre-negotiated, upon termination of the employment agreement. *See Id.* at 8. Thus, the parties exercised their rights under the employment agreement when they terminated the agreement and executed general releases.

### C. TCG Has Not Sufficiently Plead that it Has Incurred Damages

In order to recover under a third party beneficiary theory, TCG must plead and prove that it has suffered damages as a proximate result of KW's and/or Kravit's breach of the employment agreement. *See Jenne*, 814 So.2d at 524. As discussed in the previous section, TCG has not alleged that there was a breach of the employment agreement. Even assuming, *arguendo*, that TCG properly plead that KW and/or Kravit breached the employment agreement, TCG has not sufficiently alleged how TCG has been damaged by the breach of the employment agreement.

#### 1. TCG's Claim For Damages as a Third Party Beneficiary to the Employment Agreement is Premature

Paragraph 11 of the employment agreement provides that KW will "indemnify [Kravit] from all claims or suits arising out of or in connection with [Kravit's] non-solicitation, non-competition, anti-kickback, and confidentiality agreement with competing business [TCG]." Thus, TCG would have to obtain an uncollectable judgment against Kravit *before* claiming that it has suffered any damages. Stated differently, assuming that TCG were to obtain a judgment against Kravit that she was to satisfy from her own assets, TCG would have no cause of action against KW.

#### 2. TCG Has Not Adequately Plead That it Detrimentally Relied on the Employment Agreement

TCG has not alleged, nor could it in good faith allege, that it relied upon the employment agreement when it filed the lawsuit. TCG has not plead the date when it first learned about the existence of the employment agreement, which gave rise to their reliance upon it. Rather, TCG alleges that its "knowledge of and reliance upon the indemnification provision of Kravit's employment Agreement with KW" was demonstrated by "written communications on April 27, 2009, and May 4, 2009, to KW and Kravit respectively." DE 283 at 28. However, TCG filed suit on February 9, 2009, well in advance of its alleged reliance on the employment agreement. TCG has thus not alleged how it detrimentally relied on the employment agreement which caused TCG damages.

Further, as will be explained in more detail below, the employment agreement does not explicitly provide indemnification for Kravit's intentional and wrongful misconduct. TCG states in paragraph 112 of its Second Amended Complaint that "Florida contract law prohibits parties from contracting to absolve a party from liability for intentional torts and wrongful conduct." DE 283 at 29. Thus, it can hardly be said that TCG relied on KW's indemnification of Kravit's intentional torts and wrongful conduct when TCG filed suit against Kravit for her intentional and wrongful acts.

## II.   KW Did Not Agree to Indemnify Kravit For Her Wrongful or Intentional Acts

TCG's claims against Kravit stem from Kravit's alleged intentional and wrongful conduct in taking TCG's "confidential" and "proprietary" information. The employment agreement does not explicitly provide for indemnification for Kravit's wrongful and intentional conduct. On the contrary, the employment agreement specifically *exempts* Kravit's gross negligence and intentional misconduct. Paragraph 11 of the employment agreement provides that KW will indemnify Kravit "for all claims or suits arising out of or in connection with [Kravit's]

performance of duties under this Agreement and for any claims or suits arising during the course or scope of [KW] conducting business, ***with the exception of [Kravit's] gross negligence or intentional misconduct***." (emphasis added).

"Under Florida law, construction of a contract of indemnity generally is a question of law for the court applying recognized rules of contract construction." *Gibbs v. Air Canada*, 810 F.2d 1529, 1533 (11th Cir. 1987). In Florida, "agreements to indemnify parties against their own wrongful acts are not favored and will be enforced only if they express such an intent in clear and unequivocal terms. In the absence of such a clear and unequivocal contractual expression of intent, any fault of the indemnitee that is a legal cause of its own loss will negate the contractual indemnitor's obligation." *Id.* at 1534. KW's employment agreement with Kravit makes it clear that KW is not indemnifying Kravit for wrongful or intentional acts, thus, Kravit is liable for her own intentional and wrongful conduct of taking TCG's information.

Further, even though paragraph 11 of the employment agreement states that KW "shall indemnify [Kravit] from all claims or suits arising out of or in connection with [Kravit's] non-solicitation, non-competition, anti-kick back, and confidentiality agreement with [TCG]," this language does not clearly and unequivocally provide that KW was to indemnify Kravit for her own wrongful and intentional acts. *See Univ. Plaza Shopping Center, Inc. v. Stewart*, 272 So.2d 507, 511 (Fla. 1973)(holding that the use of the general terms 'indemnify . . . against any and all claims" does not disclose an intention to indemnify for consequences arising solely from the acts of the indemnitee); *see also Charles Poe Masonry v. Spring Lock Scaffolding Rental Equipment Co.*, 374 So.2d 487, 489 (Fla. 1979)(holding that the general terms "assumes all responsibility for claims asserted by other persons" do not disclose an intention to indemnify for consequences arising from the wrongful acts or affirmative misconduct of the indemnitee). Because KW did

not indemnify Kravit for the claims TCG has brought against Kravit due to her intentional misconduct and civil violations of a criminal statute, namely tortious interference with business relationships and violation of the CFAA, Kravit would not be entitled to indemnification from KW.

**III.     TCG Failed to State a Claim for Conspiracy to Defraud**

  A.     TCG's Claim For Conspiracy to Defraud is Not Plausible

A complaint must include more than just speculative claims. *Wright v. Standard Ins. Co.*, No. 8:07-cv-1586-T-23MSS, 2008 WL 1766938, at * 1 (M.D. Fla. Apr. 16, 2008). In other words, "the factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief." *Id.* (citations omitted). In *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009), the Eleventh Circuit stated

> A claim must state a plausible claim for relief, and a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The ***mere possibility*** that the defendant acted unlawfully is insufficient to survive a motion to dismiss. The well-pled allegations must nudge the claim across the line from conceivable to plausible.

(emphasis added).

TCG alleges that "The General Releases – specifically, Kravit's General Release of KW – were intended to unlawfully prevent TCG from actually recovering on a likely judgment or favorable settlement obtained in this lawsuit by shielding KW's assets that would otherwise have been available to satisfy any amount owed to TCG by Kravit and by delaying or hindering TCG's collection of the likely judgment or favorable settlement." DE 283 at 30. However, the execution of the general releases was a lawful right that KW and Kravit chose to exercise. Further, it should be readily apparent to the Court that KW was blindsided and shocked by the

evidence introduced at the preliminary injunction hearing regarding Kravit's purported conduct. It should come as no surprise to anyone that KW sought to terminate its contract with Kravit after the preliminary injunction hearing. When the Court draws on its prior judicial experience and common sense, it will be apparent that TCG's claim for conspiracy to defraud is implausible and the allegations contained in Count VII are merely speculative statements about KW's supposed intent to "defraud TCG." *See Henry v. Federal-Columbus, Inc.*, No. 8:09-cv-1809-T-26MAP (M.D. Fla. Oct. 7, 2009)(Court relied on its prior judicial and common sense when determining whether the alleged facts plausibly gave rise to an entitlement to relief).

      B.      <u>TCG Did Not Sufficiently Plead the Existence of an Underlying Unlawful Act</u>

A cause of action for conspiracy requires showing: (1) a conspiracy between two or more parties, (2) to do an ***unlawful act*** or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006). Further, in order to state a claim for conspiracy, TCG must plead that the ***very purpose*** of the conspiracy was to achieve an illegal goal. *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So.2d 490 (Fla. 3d DCA 1994). If the object of the alleged conspiracy or the means used to attain it is lawful, even if the defendants acted with malicious intent, there can be no civil action for conspiracy. *See Am. Diversified Ins. Services, Inc. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906 (Fla. 2d DCA 1983).

KW and Kravit were lawfully entitled to settle any claims the parties had against each other and enter into contracts to limit each party's liability. *See Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 593 N.E.2d 142, 145 (Ind. App. 1991)("Ordinarily, in the absence of prohibitive legislation, no public policy prevents the parties from contracting as they desire").

Even if, assuming *arguendo*, KW's and Kravit's intent in executing the general releases was malicious or an attempt to intimidate or dissuade TCG from further litigating this lawsuit, as TCG claims [DE 283 at 30], that alone does not give rise to a claim for conspiracy. A lawful act does not become unlawful merely because of the intent behind the lawful act. KW's right to terminate Kravit for any reason, pay her severance, and have Kravit sign a general release was ***pre-negotiated*** and made part of the employment agreement. Because TCG failed to plead an underlying **unlawful** act, TCG has failed to plead a cause of action for conspiracy, and Count VII must be dismissed.

### IV.     TCG Has No Standing to Declare that Kravit's General Release of KW is Illegal, Null and Void

TCG is not a party, nor does TCG allege that it is a party, to the general releases executed by KW and Kravit. Thus, TCG has no standing to obtain a declaration that the general releases are illegal, null, and void. *See Arvesu v. Blancom Prop.*, 913 So.2d 1231, (Fla. 3rd DCA 2005)(holding that the appellant was not a party to the contract, and thus, did not have standing to seek rescission of the contract. "[Appellant] was a stranger to the contract, and had . . . no legal or equitable rights affected thereunder that it could pursue."); *see also Kumar Corp. v. Nopal Lines, Ltd.,* 462 So.2d 1178, 1183 (Fla. 3d DCA 1985)(holding that standing encompasses not only a sufficient stake requirement but also a requirement that the claim be brought by or on behalf of one who is recognized in the law as a real party in interest, that is, the person in whom rests, by substantive law, the claim sought to be enforced). TCG is not a third party beneficiary of the general releases either. *See FP&L v. road Rock, Inc.*, 920 So.2d 201, 203 (Fla. 4th DCA 2006)("A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party"). To the contrary,

TCG alleges that it has been harmed by the general releases. Therefore, Count VI should be dismissed.

WHEREFORE Defendant, KW PROPERTY MANAGEMENT, LLC, respectfully requests that Counts V-VII of Plaintiff's Second Amended Complaint be dismissed for failure to state a claim, and that KW be awarded attorney's fees and costs.

## MOTION TO TOLL TIME TO RESPOND TO REMAINDER OF SECOND AMENDED COMPLAINT

On October 30, 2009, the Court entered an Omnibus Order Re: Scope of Injunction and Bond [DE 282], which granted in part KW's Motion to Dismiss [DE 161] as to the CFAA claim in Count I and denied KW's Motion in all other respects. In its Omnibus Order, the Court also denied Plaintiff's Motion for Relief from Local Rule 15.1 Requirement to Replead Entire Complaint [DE 192] and ordered Plaintiff to file its Second Amended Complaint as a stand-alone docket entry. The Court ordered Plaintiffs to file a full complaint as a stand-alone docket entry because "simply allowing Plaintiff to file an addendum to its First Amended Complaint without the filing of a new complaint would be confusing for the record." DE 282 at 11. This same reasoning has been expressed by various courts when determining that "even though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to . . . respond to all claims." *Pestube Sys., Inc. v. Home Team Pest Defense, LLC*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *7 (Ariz. May 24, 2006)(citing *Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572-73 (E.D. Va. 2002); *Ritts v. Dealers Alliance Credit Corp.*, 989 F.Supp. 1475 (N.D. Ga. 1997); 5A C. Wright and A. Miller *Federal Practice and Procedure*; Civil 2D, § 1346, 146 (2d ed. Supp. 2002)).

In order to keep a clear record, and to avoid answering the Complaint piecemeal, KW respectfully requests that the time to respond to the remainder of the counts in Plaintiff's Second

8775459.3

Amended Complaint be tolled until the Court rules on KW's Motion to Dismiss Counts V-VII. *See Id.* ("The rationale behind tolling the time to all claims is that requiring a defendant to answer some of the claims creates the possibility of duplicative proceedings if the motion to dismiss were to be denied.")

WHEREFORE Defendant, KW PROPERTY MANAGEMENT, LLC, respectfully requests that this Court enter an Order granting its Motion to Toll Time to Respond to Remainder of Second Complaint and allow KW to answer Counts II-IV after the Court rules on KW's Motion to Dismiss Counts V-VII.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        **ARNSTEIN & LEHR LLP**
        *Counsel for Defendant KW Property*
        *Management, LLC*
        200 East Las Olas Blvd
        Suite 1700
        Fort Lauderdale, Florida 33301
        Phone: (954) 713-7600
        Fax: (954) 713-7700
        Email: flzemel@arnstein.com
           nfguerra@arnstein.com


        By: /s/ Natalie F. Guerra, Esquire
          Franklin L. Zemel
          Florida Bar No. 816620
          Natalie F. Guerra
          Florida Bar No. 0058737

## THE CONTINENTAL GROUP, INC. V. KW PROPERTY MANAGEMENT, LLC et al.
## 09-CV-60202-COHN-SELTZER

## SERVICE LIST

**Jason Robert Nickerson, Esq.**
**Joan Marie Canny, Esq.**
Counsel for Plaintiff
MORGAN LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
Suite 5300 Wachovia Financial Center
Miami , FL 33131-2339
Telephone: 305-415-3384
Facsimile: 877-432-9652
Email: jnickerson@morganlewis.com
         jcanny@morganlewis.com

**Frank Christopher Simone, Esq.**
SHERMAN LAW OFFICES
1000 Corporate Drive, Suite 310
Fort Lauderdale , FL 33334
Telephone: 954-489-9500
Facsimile: 954-489-9531
Email: fcs@shermanlegal.com

**Gary William Pollack, Esq.**
GARY W. POLLACK, P.A.
1  S.W. 3rd Avenue, Suite 1260
Miami, Florida 33131
Telephone: (305) 373-9676
Facsimile: (305) 373-9679
E-mail: hopeylaw2112@gmail.com

**Franklin L. Zemel, Esq.**
**Natalie F. Guerra, Esq.**
ARNSTEIN AND LEHR LLP
200 East Las Olas Blvd. Suite 1700
Ft. Lauderdale, Florida 33301
Telephone:  (954) 713-7600
Facsimile:  (954) 713-7710
E-mail: flzemel@arnstein.com
          nfguerra@arnstein.com

**Steven W. Teppler, Esq.**
KAMBEREDELSON, LLP
11 Broadway
22nd Floor
New York, New York 10004
Phone: (941) 924-3112
Fax: (941) 870-4403
Email: steppler@kamberedelson.com

8775459.3